## STATE v. SETH MASSENGILL, ALTON BAREFOOT and ALTON JOHNSON.

(Filed 17 March, 1948.)

**1. Larceny § 7—Circumstantial evidence of defendants' guilt of larceny held sufficient for jury.**

Evidence establishing the larceny of a quantity of cotton and evidence that tracks found at the scene corresponded to those of defendants, that there was a trail of loose cotton from the scene to the home of one of them, that the three defendants appeared the next morning "before good light" at a gin more distant than the one usually patronized by them, with a like quantity of cotton, where they immediately sold the cotton, together with evidence of conflicting statements made by them and evidence tending to show defendants did not own such quantity of cotton, *is held* sufficient to overrule defendants' motion for nonsuit in this prosecution for larceny.

**2. Criminal Law § 52a—**

When circumstantial evidence raises a reasonable inference of defendants' guilt, it is for the jury to decide whether the facts taken singly or in combination produce in their minds the moral conviction of guilt beyond a reasonable doubt.

**3. Larceny § 8—**

An instruction in a larceny prosecution which inadvertently fails to charge that the taking must be felonious, must be held for reversible error.

**4. Criminal Law § 53d—**

Where the evidence as against each of the several defendants charged is not identical, the trial court should submit the question of the guilt or innocence of each separately, and an instruction which requires the jury either to convict all defendants or to acquit all, is reversible error.

APPEAL by defendants from *Grady, Emergency Judge,* at December Term, 1947, of JOHNSTON.   New trial.

The defendants were indicted for larceny of 800 pounds of cotton, the property of N. L. Massengill.

There was evidence for the State that on the night of 6 November, 1947, seed cotton, in quantity between 800 and 1,000 pounds, was stolen from the premises of the prosecuting witness.   This cotton had been put in 8 brown sheets, and placed under an open barn shelter, ten feet from the road.   The loss was discovered next morning about 8:30.   The evidence indicated that the cotton had been carried from the shelter and loaded on a truck a short distance down the road.   The tracks of four men were visible on the ground between the shelter and the road, and there were bits of cotton along the road, which led to the home of defendant Barefoot.   N. L. Massengill testified: "I found cotton strewn from my house to Barefoot's house along the road."   He also saw a lock of cotton near the edge of the road at Barefoot's driveway.   Examination of the tracks by this witness and the officers showed one shoe had left the impression in the sand of 13 to 19 tacks, and on defendant Johnson's shoe were found the same number of tacks, and these fitted and corresponded with the impressions on the ground exactly.   Another track corresponded with the shoes of defendant Massengill and his shoes were found to fit these tracks.   Cotton had also been stolen on the same night from another resident of the community.   The three defendants lived within a few hundred yards of each other and about two miles from the prosecuting witness.   Barefoot owned a truck.   Defendants Massengill and Johnson were tenants of Carson Lee and Barefoot lived on his wife's land.

The evidence further showed that early on the morning of 7 November, about 6 a.m., "before good light," defendant Barefoot drove his truck

loaded with two bales of seed cotton in sheets to the gin at Benson, nine miles from his home, accompanied by defendants Massengill and Johnson. This cotton was ginned and immediately sold in the name of Barefoot. When questioned about this by the officers, Barefoot first said it was his wife's cotton, and later admitted he had carried one bale for defendants Massengill and Johnson. The gin at Four Oaks, usually patronized, was only four miles away. The landlord of defendants Massengill and Johnson testified that they had at that time picked but a small quantity of cotton, less than a bale, and Johnson's wife told the officers in his presence that all the cotton he had picked was in the house, and showed them in a room some 200 pounds. No notice had been given or permission obtained from the landlord to remove any cotton. A few days afterward defendant Johnson was asked by a witness, "What did you boys steal that cotton for?" and he replied, "I don't know."

The defendants offered evidence in defense, denied taking the cotton, and claimed the cotton hauled on 7 November was their own. Each defendant, on cross-examination, admitted having been heretofore convicted of violation of law. Another person was originally indicted with these three defendants, but the evidence as to him was held insufficient.

The jury returned verdict of guilty as charged, and from judgment imposing sentence, the defendants named appealed.

*Attorney-General McMullan and Assistant Attorneys-General Bruton, Rhodes, and Moody for the State.*

*Wellons & Canaday for defendants.*

DEVIN, J. The defendants' motion for judgment as of nonsuit was properly denied. There was proof that the cotton described in the bill of indictment had been feloniously taken on the night of 6 November, 1947, and that it had been removed from the place where stored and carried away by truck. This, with the evidence of the identification of the tracks of those who removed it as having been made at the time by two of the defendants, a trail of loose cotton leading along the road to the home of the other defendant who owned a truck, the appearance of the three the next morning "before good light," at a gin, nine miles away, with the truck laden with two bales of seed cotton in sheets, together with evidence of conflicting statements, would seem to afford some evidence, when considered in the light most favorable for the State, to implicate the defendants as the guilty parties. There was also evidence to negative the suggestion that the cotton asported belonged to the defendants. *S. v. McLeod,* 198 N. C., 649, 152 S. E., 895; *S. v. King,* 222 N. C., 239, 22 S. E. (2d), 445; *S. v. Warren, ante,* 22, 44 S. E. (2d), 207. "When reasonable inferences may be drawn from them (the circumstances in

evidence) pointing to defendant's guilt, it is a matter for the jury to decide whether the facts taken singly or in combination produce in their minds the requisite moral conviction beyond a reasonable doubt." *S. v. Ewing,* 227 N. C., 535, 42 S. E. (2d), 676; *S. v. Lawrence,* 196 N. C., 562, 146 S. E., 395.

However, we think there was error in the instruction given by the court to the jury which entitles the defendants to a new trial. According to the record before us the only instruction given by the court in the application of the law to the evidence was that if the jury found beyond a reasonable doubt "that these defendants took N. L. Massengill's cotton away on the night of the 6th of November, and sold it and converted the proceeds thereof to their own use, it would be your duty to return verdict of guilty; if you are not so satisfied it would be your duty to return verdict of not guilty." The learned judge inadvertently omitted to charge that the taking must be felonious (*S. v. Cameron,* 223 N. C., 449, 27 S. E. (2d), 81), and his charge would also seem to require the jury to convict or acquit all three defendants indiscriminately, without distinction between them. The evidence against the three defendants was not identical as to each, and the jury should have been instructed they had the right, if they so found the facts to be, to convict or acquit one or more of them. The defendants were entitled to have the question of the guilt or innocence of each, on the evidence presented, submitted to the jury.

New trial.